Mon Feb 3/20

United States District Court
450 Main St Hartford Ct. 06103
District of Connecticut
Case No 302 CV 2228

Plaintiff - Andrew Richardson att of B.K. in R.I.

Defendant       George A. Negro   Pawcatuck, Ct.
                Tele 860 599 2620

Affidavit of George A. Negro
Pawcatuck, Ct.

1.

Marided G.W. Dould for Gladys

John Metas Accounting from 1980 to 1997
Ciencial invester, Hily Educated, Gift of Gab Better then Presented Clinton, A Top Profecional Con Artis

Money Obtained from G.W. Directly or Indirectly

1980: $10,000 investman that would net big profits.
1980: Three mons later, flies my dauter Lori up to Bolton Conn to invest another 10,000 in a peramid Club. I was not interested. Lorie is working for the MedasCo. It was very important that she got the money. A few tears & I gave her the $10,000. A Month later, the radio & T.V. top news was a national scam operation called the piramid Club. No Contact for three years. They live in Los Vagues. Three years go buy — I get a call from N.Y. City from Lorie — Needs $3,000 & a Car as she & John are sepetated. Lorie comes by bus to Hartford. Give Lorie 3,000 & my Car. Two weeks later, Johns bak with Lorie. John Metas alway had a grate repore with Gladys, My wife. I did not, because his gift of gab. But no productyvey!

In 1988, I sold one of the two large dairy farms that I was operating. I was all so operating five school bus Contrats for 5 towns & a Charter operation with an ICC Authortly & livey permitts. Coaches for tours threw out the U.S. Called Eastern Bus Lines Inc. Gladys was totaly oposed to selling the Manchester farm as it was our home. 1684 It was excellent developing property & I sold it. Gladys is upset, John adviser her to see an attorney. When I sold the farm I had cut out

2.

the 11 room farm house & 4 lots. The attorney Jacobson advises Gladys to have no contact with me & forget the 4 lots & she could purchased them later. I did not used a lawer as this was not a bitter fight. The court awarded Gladys - One million dollas to be paid $100,000 a yer for 10 yrs, $300 a week, car, the house no intrest Ins & her attorneys fees ($65,000 outrages). I paid 100,000 1st yr - 100,000 2nd yr, Jacobson puts the million dollar lean on all my propertys, Bolton, Mansfield, Groton, Westerly, Westword Ledger - Hopkinton & Charlestown. 1990 & 91 the valuations are droping & the bancks are in trubble & with this one million dollar lean on my propertys (indudely) the banks started calling in the loans. Had to sell 5 shore line propertys for the mortages. Could not pay 100,000 a year & the 300 per week. Gave Gladys one of the two mortages on the Iland House that was a resturant with a licbor liences, that was paying 1200 per month entrest only & it gave Gladys ownership of the resturant that is on Musequman Beach in Westerly. Attorney Commali advised me to file Chapter 7 gain b money I would be back in bussness (Big Mistake) 1993. In 1993 John Comes to Conn We all have dinner at the Point in Gannies. My son & 3 dauters John & all the children. John was interested in getting involved with the bussness. I spent 4 full days showing him everthing I could. In the four days he seemed extremly intrusested in everthing & I taught he had Changed. Sharron & Lee were not 1994 imprssed with Johns Ideas. Lee died sudenly in Feb 41 yrs old.

1995 John reapears on Gladys behalf as he is concer[ned] about Gladys welfare, as Gladys is living with Linda in Concord Mass after living with Sharron for 6 months. Unbe known to me, the farm house on Vernon St. Machster [Manchester] has been totaly neglected & the furness had an explossion from lack of cleaning & serviceing. Soot went threw the whole house, threw the walls all the way up to the attic. 3rd flr John is on the phone with every one induviduly. Sharron was totaly oposed to Johns ideas & refused to take any more of his calls. John talks to me, Linda, Gladys seperately on his plans to retain the propertys by tureing over the million note to him. My agreement with John was by turning over the note to John, we could retain the Ledger Garage, the Groton Garage, the Bolton Garage the Mansfield Garage the Gruswould Garage, the land house & the Bolton Dairy property. Agreed, but I had to wire him $5,000 so that he Lorrie & the baby could come out here & also I would remodel Veron St so that Gladys could moved back Home. Vernon St was a disaster. The whole North side had leaks on the roofs threw the years Causing the roof Ceiling & walls to rott. Very expensive but John would be able to produce rental encome from the propertys. John has the one million dollar note with no security other then he would have the propertys he producing as I woul manege them as I knew how to make them produce John would hard the finecies

Set up the Bolton Garage with a new trailer 16'w by 60'ft long with 5 offices Good stuff. Then John left to Los This is what happens Nov 1995 to Jan 10/96 Johns 2nd Vegas

John allows Griswould to be sold by the bank & John collects $40,000 after the bank is pd off     Griswald $40,000
John allows Ledger to be sold. Collects     90,000
John allows the Lang house to be sold. & Gladys owes     154,000
I have a $40, mortage on a building John discounts it for Cash     15,000
    296,000

John is back in Los Vagus as of Jan 10/96 because he had other eqpmt business to take care of. When John left he took $14,000 of rent money from the Bolton Garage. He was supposed to return. Instead all these transaction are done from Los Vagus there w his new attney Mark Block. Total of $296,000 colleted

John did give Glady $15,000 dollars.

I am operating the Groton garage property 34A Comerical. John forcloses. The agreement was 4A & the garage we going to be subdivided. Sell the 30 A. John Forcloser goes into effect Mar & has the police order me off the Groton property as it is now Johns. My eqt & customer cars are in the garage when I am order off it & is still in there. We had been arguing over the sale of the other property back in Jan. 97 The Groton property was when I made the stupid call to John & Ledge about the Million dollar note. I played right into his hands. There is no way that I ever planed to kill him. This has created total destruction with my

15 97

daters & the six GrandChildren.
Have the Attorney Jim Kerber to send letter to
John Medas's attorney Mark Block, to see if we or I
can bring the family back together, as there is
still much to be gained working together on the
remaning propertys and to insurance a trust
for the grandchildrens Colledge education.
So very important in to days fast Chancking world.
I ownly went to the eight grade. My spelling &
wording is not good. I started with $750. in 1945
I worked all my life basicly seven days a week. It is
so tragic to see so much be destroyed. However there
is still much to be solvauge & so much oppertunty
if your not afariad to worke.
Because of John Medas, in a state of anger, During my 2 months in jail, Dick Cervola
thanten to kill him, who was a tennant & renting 4 bays of the garage & I
I had evicked him out of the garage as of Feb 28/97
& I changed all the locks. Cervola has stolen
4 vechiles that wer outside & broke into the Garage
took a car that was his that was being stored in the
Garage Jan & Feb at $10 per day = $600. owed plus a lot of garage
tools that are mine. This is reported to me by my
Mankic Tom Evens, who had to find another job.
Some of Toms tools were also stolen. Now that John Medas
has forcoled on the property & order me off of it, the
Repair Lisenses is stil in my name as it is at state

6.

Lience. This reparer liences is not transferable. A new liencens can not be gotten as the property is on water Aquafone. State law like that no new liencens are granted. John Kerker attorney is trying to work out a working agreement with every one threw Johns attorney Mark Block. In the meantime the rentals on the Bolton Garage, Mansfild Garage & the Bolton Dairy, draven fallen behind. There is much more — I will update you in more detail as as soon as I can. This does not take in anything about the Bankruptcy Court. Will update you with much more & in more detail, soon as posibley

Fowling Pages

George Negus

May 28, 2003

Matthew J. McGowan
Salter McGowan Sylvia & Leonard
The Heritage Building
321 S. Main St.
Providence, Rhode Island 02903

**VIA FAX TRANSMITTAL: (401) 453-0073**

Dear Mr. McGowan:

Pursuant to our telephone conversation of last week, let this letter serve as my attempt to settle the matter currently pending, regarding the Probate of my Mother's Estate, as relates to my Bankruptcy case.

This matter has now been pending, since my mother's death over 15 months ago. Based on your own current estimates to the Court, of an initial trial date, it could conceivably extend to two years, before a judgment is rendered; not to mention the almost certain appeals by either party, regardless of the decision of the trial court.

The obvious impact on my Bankruptcy Estate in terms of legal fees and other costs, has to date, and will continue to be, substantial. Also, the fact that the Trustee has consistently indicated for the last 3 years that he will not "close the books" on my over 10 year old Bankruptcy case, until such time as this matter is resolved further hinders my ability to recover from this very devastating financial crisis, that has plagued me since January of 1993.

[redacted] myself to retain a small home, and some personal property, out of an estate that had dozens of parcels of real estate and was initially valued at $12 million dollars. I have been precluded from re-establishing myself in the business community, or re-establishing any personal credit - in my own name - as a direct result of the "dark cloud of an open bankruptcy case" lingering (without any good

reason, it seems to me, but to build legal and professional fees - which on a percentage basis seem disproportionate to the resolution of any creditor claims, and preclude me from getting on with my life and financial recovery) for over a decade.

I am now, a 77 year old man who - despite the great assets I had accumulated over a lifetime of hard work, which gave both jobs and careers to hundreds of individuals and their families - has been relegated to living in a 600 square foot assisted living facility, with only my $1250 social security stipend on which to survive. Now, the very last vestige of hope for me - in the form of a very arguable "asset" that did not even become an arguable "asset" until my mother passed away in February of 2002 - is being held hostage. Considering my advanced age and financial limitations, perhaps the Trustee is hoping that I will either not survive the legal process, or will simply not pursue my full legal recourse. While I cannot control the former; I assure you I will never shirk from the latter.

In any event, in an effort to not only resolve the instant case, but to finally "unlock the door" on my over a decade old "bankruptcy jail" - which in and of itself has devastated any chance of a financial or business recovery for me - I would make the following proposal.

That the balance of funds, remaining in my mother's estate, be equally divided between my bankruptcy estate and myself. That the Trustee, as a result of that resolution, make a good faith effort to close my case immediately, and release me from the "chains of bankruptcy" allowing me some opportunity to achieve a respectable and reasonably comfortable twilight of my life. Surely, there must be some compassion for my plight amongst those of you who deal daily with the devastation of bankruptcy; not to mention the total destruction of my 45 years of hard work, and my current living conditions.

I ask that you seriously consider this settlement proposal, as one that is fair and equitable - particularly considering the specifics of my case. While I still maintain that I am entitled to the entire amount of my mothers estate by virtue of her, and my father's last will and testament - I also must be practical and try to move on with whatever life is left to me, as soon as possible.

Please, also bear in mind that my mother was already institutionalized with a debilitating dementia - when I filed my case in 1993. She had no ability to alter her will, or adjust to the bankruptcy court's attempts to attach **her assets**, as part of my bankruptcy estate.

I am no lawyer, but surely anyone would suspect - had she been able to function mentally - she would have retained legal counsel to assure that her last will and testament did not allow the US Bankruptcy Court, or anyone else for that matter, to circumvent her last wishes for the disbursal of her assets and estate, after her death.

Her assets were never subject to the legal control of the US Bankruptcy Court during her life. Only in death did they become at issue. She was not the debtor in this case, and her assets were never legally frozen or subject to lien. Please consider all of these aspects as they are very relevant, and perhaps not enough attention has been given to my mother's last decade of life and her inability to protect her assets. Her legal conservator was himself a very old man, and in ill health. He surely could not know what her desires were in this regard - as she was unable to communicate with him at all for the last 10 years of her life - and certainly not when the Bankruptcy court issued a ruling, essentially - without any legal basis or proper notice - usurping her, and my father's, last wishes for the allocation of their estates to their children.

Please, let me know your answer to this proposal within 7 days. While I think this is a "fair" settlement, considering all of the unusual parameters of this case, I still stand ready to pursue my full legal recourse, should you reject it - no matter what the personal effect it may have on my quality of life.

Thank you for your professional courtesy in this matter.

Sincerely,

*George Negro*

George Negro
8605992620

CASTLEMAN & LUKENSTEIN

One Davol Square
Third floor
Providence, Rhode Island 02903
(401) 751-6610

Mr. George Negro
RFD 1, Route 85
Bolton, Ct 03040

Dear Mr. Negro,

I am pleased to inform you that your loan application, to borrow, 1,225,000.00, to purchase 81 acres more or less, and a farm house, on Route 85, (West Street, lots 4A&4B), in Bolton Connecticut, has been approved. We will lend you the full amount you requested, (1,225,000.00), subject to the following terms and conditions. This commitment shall expire in 60 days.

1. An interest only note for a period of two years from the date of closing. At the prime lending rate (currently 10.50%) + 1 1/2%, floating, adjusted monthly.

2. Two (2) origination points. One (1) to be paid at commitment, the second at closing.

3. Good, clear, marketable, and insurable title.

4. An environmental site assessment, completed by a licensed engineer, indicating no formal contamination of said site.

5. Assignment of all leases, on property owned by Mr. Negro, located on 260 West Street, Bolton Connecticut.

6. A mortgage lien of 1,225,000.00 on property owned by Mr. Negro on Gold Star Highway in Groton Connecticut.

Sincerely,

Fred S. Hashway, Jr.
Vice President

## SUMMARY OF MAJOR POINTS FOR PROBATE CASE

- PROBATE COURT ALREADY RULED IN MARCH (Res Judicata) TO DISBURSE ESTATE TO ALL 3 BROTHERS

- SCWEBEL ALREADY HAS ISSUED TWO CHECKS TO ALL 3 BROTHERS IN CONCERT WITH COURT ORDER OF 4/1/02 WHICH FURTHER ESTABLISHES "RES JUDICATA"

- TRUSTEE RICHARDSON NEVER FILED A "LIEN" ON THE ESTATE, ONLY HAS AN ORDER CLAIMING AN "INTEREST" IN THE ESTATE.

- YOU COULD NOT AFFORD TO APPEAL EVEN THAT ORDER AS THEY HAD LITERALLY STRIPPED YOU OF ALL YOUR MONEY AND YOU WERE LIVING ON SOCIAL SECURITY INCOME ONLY. COURT WOULD NOT APPOINT A LAWYER TO ASSIST YOU EITHER.

- TRUSTEE RICHARDSON TOOK ADVANTAGE OF THE FACT THAT YOUR MOTHER SUFFERED FROM ALZHEIMERS AND COULD NOT CHANGE THE WILL OR HER ESTATE TRUST. THIS WAS A MOST OUTRAGEOUS ACT ON THEIR PART.

- TRUSTEE FULCO SHOULD NOT BE ALLOWED TO FILE AN INTERPLEADER AS THIS COURT IS THE CORRECT JURISDICTIONAL VENUE, AND CAN HOLD ANY HEARING IF NEED BE AND ISSUE A FINAL RULING.

- FURTHER TRUSTEE FULCO SHOULD BE RECUSED FROM THIS CASE AND ANOTHER TRUSTEE INSTALLED, AS SHE IS MARRIED TO DOMINIC FULCO - A PROMINENT BANKRUPTCY LAWYER WHO MAY HAVE HAD, OR CURRENTLY DOES HAVE, PROFESSIONAL DEALINGS WITH TRUSTEE RICHARDSON, FURNESS OR

HIS FIRM, OR EVEN THE RHODE ISLAND BANKRUPTCY COURTS, AND JUDGE VOTALATO.

- THERE IS NO NEED TO GO TO OTHER COURTS AND INCUR ADDITIONAL EXPENSES, AS THIS COURT CAN RULE AND EITHER PARTY COULD THEN APPEAL FROM THAT RULING IF THEY SO DESIRE.

- CHALLENGE TRUSTEE RICHARDSON AS TO LEGAL STANDING IN THIS MATTER, A STATE OF CONNECTICUT PROBATE COURT MATTER.

- REQUEST THAT THE JUDGE QUESTION TRUSTEE RICHARDSON AS TO WHERE THESE PROCEEDS WOULD GO, IF THE PROBATE COURT GRANTED THEIR MOTION? WHO ARE THE REMAINING CREDITORS? DOES HE PLAN TO USE ANY PORTION OR ALL OF THIS INHERITANCE MONEY TO PAY HIS OR ANY OTHER ATTORNEY OR PROFESSIONAL FEES?

- ALSO HAMMER HOME THE FACT THAT THIS IS DOUBLE DIPPING INTO THE SAME ASSET THAT HAS ALREADY REDUCED THE DEBTOR ESTATE BY $500,000 - AND THAT ALL RICHARDSON WANTS TO DO IS GET HIS CURRENT FEES PAID, SO MUCH SO THAT HE KEPT THIS CASE OPEN FOR THE LAST 5-6 YEARS STRICTLY TO STEAL THIS MONEY FROM YOUR MOTHER'S ESTATE.

- FINALLY, CONSTANTLY BRING UP THE FACT THAT THIS COURT SHOULD DO ALL IT CAN TO HONOR THE LAST WISHES OF YOUR MOTHER AND FATHER AS TO THE BENEFICIARIES OF THEIR ESTATE.



N  G. Negro
Apt. 2
46 Sisk Dr Bldg 6
Pawcatuck, CT 06379-1942

13.