*Copies to Judge Composio atty Tuko & Richardson July 6/2002*
*To [illegible]*

# STATE OF CONNECTICUT

COURT OF PROBATE

ESTATE OF
JOSEPH NEGRO

TRUST, F/B/O
LEONTINA NEGRO

DISTRICT OF
ANDOVER NO. 001

JUNE 6, 2002

## DECLARATION OF BENEFICIARY GEORGE A. NEGRO IN RESPONSE TO SUCCESSOR TRUSTEE'S APPLICATION FOR AUTHORIZATION TO COMMENCE INTERPLEADER ACTION

On May 13, 2002 Successor Trustee, in the above entitled matter, submitted to the Probate Court a summary of "Fiduciary's Periodic or Final Account". She also filed an application for authorization to commence an interpleader action in a Federal or State Court to determine distribution of my inheritance, from my recently deceased mother Leontina Negro's estate; as well as memoranda of law in support of same.

The Successor Trustee may or may not have all the relevant facts in this case, in order to determine her recommendation to this Court, as to a proposed course of action. As one matter of actual fact, she did not include in her accounting summary that Trustee Abbott Schwebel has already disbursed two checks, to each of the three beneficiaries, in amounts in excess of $1,000, upon the order of this court on April 1, 2002. While this may or may not establish this court's initial ruling in March of this year - in the first hearing held in this matter - that the Court intended to disburse the proceeds from the estate to all three surviving sons, as per the last will and testament of Joseph Negro and in trust for Leontina Negro, it is nonetheless factual. The Court further

dismissed Mr. Richardson's claims, at that hearing, as being irrelevant. The payment of these first two checks, to all three sons, may constitute an affirmation of that order. As such this would now be a matter of res judicata, and any interpleader motion may not even be appropriate. Trustee Richardson would, therefore, more appropriately file an appeal of the Probate Court's order, or seek some other means of liening any or all of my assets.

If however, this Honorable Probate Court now seeks to amend or reverse its initial order, then I offer the following facts in objection to initiation of an interpleader action, and in support of this Probate Court's initial inclination and order; or, in the alternative, that this Court retain jurisdiction, hold any additional evidentiary hearings required, and make any final rulings on the disbursement of the funds from my mother's Estate. Mr. Richardson, as the Bankruptcy Trustee, would not be compromised, in that he could appeal any adverse ruling. I have faith in the jurisdiction, the integrity and the competency of this Honorable Court and so should he. Why go forum shopping - when a just ruling can be achieved right here, in this Court, in more timely and less costly proceedings.

First, and foremost, it should be emphasized that every dollar, that is now in the Estate of my deceased mother, was derived from her sale of that single parcel of the real property on West Street, in Bolton, Connecticut, commonly known as the Bolton Dairy Farm in 1988 - that constituted the bulk of the Estate of my late father Joseph Negro - whose last will and testament is the basis for the distribution of the assets of this Estate, to the named beneficiaries.

Further, it is significant that I, George A. Negro, was the sole purchaser of the Bolton Dairy Farm parcel, from my mother, and the funds she received were obtained from a loan to me - from a financial institution (copy of loan approval included herein as Exhibit A) - and was secured both by property I owned in Groton, CT., and the Bolton Dairy Farm. Those funds were immediately placed in trust for her total care, and well being, for the balance of her natural life. This was done, while scrupulously preserving the last will and testament of my father Joseph, that upon my mother's death any remaining funds would be distributed to the surviving Negro sons, Gilbert, Raymond and myself.

In order to preserve the integrity of my father's will and to assure that my mother be properly cared for, as well as my mother's limited capabilities to handle her own affairs, a trustee was appointed to oversee those affairs. This was agreed to, by the surviving sons, as being in the best interest of our mother, and the maintenance of the integrity of the trust.

My mother's condition deteriorated, over the last 14 years, prior to her death, and she could make no alterations or amendments to her Trust. Surely, had she been competent to handle her own affairs, she would have never allowed any proceeds from her estate to go to any party, or parties, other than her surviving sons, as was the intent of her husband's last will and testament, upon her death. She most assuredly would have amended her Estate beneficiaries, if she knew that any such possibility could occur. Surely Mr. Richardson could not have interfered with that act, or claimed an interest then. Yet he felt he could take advantage of the fact that my mother could not exercise her true will and last wishes, given all the facts, and still he seeks to literally steal that right from her, even in death. It is both a cruel and unjust act for anyone to do such a thing.

This is why I attempted to disclaim my inheritance, upon her death - so as to honor my father and mother's true wishes, and assure that their Estate go to their family members alone. Even though I truly believe I am entitled to my inheritance, and surely it would make my life a bit more comfortable in my golden years; I would rather receive nothing, and have my share go to my brothers, than to dishonor my parents last wishes, and enrich greedy attorneys, who merely seek to pay themselves. Even that was unacceptable to these men. They have already stripped me of an entire life's work and sweat. Now they wish to pick the bones of my parents as well. It is morally reprehensible and an outrage.

My purchase of the Bolton Dairy Farm, from my mother Leontina Negro, and the immediate placement of those funds in this trust in 1988, is significant. It is significant that in 1993 when I filed for personal bankruptcy, a full five years after I had purchased the property, one of the major assets of my Estate was the Bolton Dairy Farm property and its assets. That land and those assets were utilized

*[handwritten margin note: $1,225,000,- at auction]*

*[handwritten: 16.]*

by the Bankruptcy Court Trustees to reduce the Debt of my Estate by over $500,000 to a secured creditor, and over $60,000 from collected tenant rents, over a two year period, to the general fund of my Estate - mainly to pay the Trustee's attorneys and the Trustee's fees - which over the years has amounted to hundreds of thousands of dollars - and is, to this day, still accruing.

Why the aforementioned is significant, is that now comes the Bankruptcy Court, in 1996, upon a motion by the Trustee, and Trustee's counsel Peter Furness, after having already utilized the Bolton Dairy Farm asset to reduce my Estate debt to both secured creditors, and to their own fee payments, amounting to over $500,000, and they secure an "interest" in the approximately $300,000 in my mother's Estate, that would legitimately go to me, upon her death, according to her, and my father's, last wishes. Their last wishes should count for something. It truly should be a Probate Court's mission, and desire, to try and satisfy the true wills and last worldly wishes of the decedents; whenever possible and within the scope of probate law.

Essentially what the Bankruptcy Court, and the Trustee, want to do is "double dip" into the self same Bolton Dairy Farm asset, from which they already derived a benefit to my Debtor Estate of over $500,000 - and get another $300,000 from the very funds I paid my mother to purchase that very asset in 1988 - a full five years before the economic downturn of the early 1990's, and some extremely bad legal advice forced me into essentially turning over, what was on paper a $12,000,000 estate, that was immediately eviscerated by cunning, and in some cases, malfeasant Federal Bankruptcy Court Trustees and their lawyers. That, however, is a matter for another court, at another time. I merely bring it up to indicate the avarice of the Trustees and their lawyers, whom were appointed in my Bankruptcy case, since 1993.

Their "efforts" to "reorganize my debt and help me recover" in 1993, at the age of 65, has left me, a decade later at 75, residing in a very modest assisted living facility, on a fixed social security income. They did not even try to preserve one of my modest residences, as the law would have allowed, for me to live out my existence with some semblance of dignity.

4

This brings me to another significant matter that I would ask this honorable court to consider. I filed for bankruptcy in 1993. In 1996 the Bankruptcy court, upon a motion by the Trustee, and his counsel Peter Furness, were granted an "interest" in my mothers Estate. At that time I was without legal representation, after having been financially decimated for over 3 years, by a stream of supposed bankruptcy legal specialists, who were themselves enriched by the Court and the Trustees, while allowing my case, and my very life, to spiral into the abyss.

I had no financial means, whatsoever, to contest or appeal this ruling in 1996, or 1997, or to this very date. At that time, as now, I was barely able to survive day to day. I simply prayed that when the time came when my dear mother passed, that a Probate Court would see the truth of the circumstances, and not allow my mother's and father's last wishes to be trumped by slick legal maneuvering, and taking advantage of my weakened financial position to defend myself against unfair or unjust actions.

It should also be of interest, to this honorable Court, that since the Trustee and his counsel obtained their order of an "interest" in my mother's Estate in 1996, they have consistently refused to close my Bankruptcy case, which is now almost a decade old. There are no other financial or property assets, that I am aware of, that are to be liquidated; and it is questionable if the Trustee intends to make any further payments to any unsecured creditors, as the secured creditors have all been essentially paid by the sale or foreclosure of my other real property assets.  *Now 11 yrs.*

As a matter of fact over the years, when I have questioned the Trustee and his counsel, why my case was not being closed out, and also requested detailed financial accountings from the last 6 years; I have been consistently told (in a most callous way I might add) they were "waiting" for my mother to die to get the funds from her Estate. It would be no surprise if every dollar of my mother's Estate were to go to the payment of the Trustee, and the Trustee's attorney's, fees - with a rapid close-out of my case shortly thereafter - over 6 years later than they might have closed it out. This has been a pattern of behavior of

18.

the Trustees, and their counsel, in my bankruptcy case from the very beginning.

As the Successor Trustee, Ms. Fulco, accurately points, out in her application, the Bankruptcy Court never actually placed a "lien" on my mother's Estate, but merely allowed the Trustee to claim an "interest". Further, this order was obtained from a court in Providence, Rhode Island, albeit a Federal Bankruptcy Court, that may or may not have jurisdictional standing, or judicial supremacy, over this Honorable State of Connecticut Probate Court, in a State Probate matter.

As to any interpleader action in another State or Federal Court, that hardly seems to be necessary, and would add unnecessary time and expense to the resolution of this matter. This honorable Court is perfectly capable of taking testimony - such as the aforementioned factual assertions - and hearing from other witnesses, including the Trustee and the Trustees' counsel, to determine if the funds at issue should be legally distributed either to them, or the beneficiaries whom my father and my mother left this world believing would receive them - their blood family, which would mean all three of their surviving sons and their respective families.

Therefore, declarent prays that this Honorable Court will consider the aforementioned factual assertions, and deny the Successor Trustee's motion and application to file an interpleader in this case. Further that this Court retain jurisdiction over this matter and sustain it's initial order of March, 2002. If the Court does not wish to rule at this time, and desires to take more testimony; that it order an expeditious and expanded hearing; and, then render an unbiased and reasoned decision, based on both the law, and the last will and testament of my father Joseph Negro and, on his behalf - as well, as her own - my mother Leontina Negro. Thank you.

Respectfully submitted,

*George A. Negro*

George A. Negro

19.

## SUMMARY OF MAJOR POINTS FOR PROBATE CASE

1. • PROBATE COURT ALREADY RULED IN MARCH (Res Judicata) TO DISBURSE ESTATE TO ALL 3 BROTHERS. *Mar 7*

2. • SCWEBEL ALREADY HAS ISSUED TWO CHECKS TO ALL 3 BROTHERS IN CONCERT WITH COURT ORDER OF 4/1/02 WHICH FURTHER ESTABLISHES "RES JUDICATA"

- • TRUSTEE RICHARDSON NEVER FILED A "LIEN" ON THE ESTATE, ONLY HAS AN ORDER CLAIMING AN "INTEREST" IN THE ESTATE.

- • YOU COULD NOT AFFORD TO APPEAL EVEN THAT ORDER AS THEY HAD LITERALLY STRIPPED YOU OF ALL YOUR MONEY AND YOU WERE LIVING ON SOCIAL SECURITY INCOME ONLY. COURT WOULD NOT APPOINT A LAWYER TO ASSIST YOU EITHER.

- • TRUSTEE RICHARDSON TOOK ADVANTAGE OF THE FACT THAT YOUR MOTHER SUFFERED FROM ALZHEIMERS AND COULD NOT CHANGE THE WILL OR HER ESTATE TRUST. THIS WAS A MOST OUTRAGEOUS ACT ON THEIR PART.

- • TRUSTEE FULCO SHOULD NOT BE ALLOWED TO FILE AN INTERPLEADER AS THIS COURT IS THE CORRECT JURISDICTIONAL VENUE, AND CAN HOLD ANY HEARING IF NEED BE AND ISSUE A FINAL RULING.

- • FURTHER TRUSTEE FULCO SHOULD BE RECUSED FROM THIS CASE AND ANOTHER TRUSTEE INSTALLED, AS SHE IS MARRIED TO DOMINIC FULCO - A PROMINENT BANKRUPTCY LAWYER WHO MAY HAVE HAD, OR CURRENTLY DOES HAVE, PROFESSIONAL DEALINGS WITH TRUSTEE RICHARDSON, FURNESS OR

20.

June 6/2002

HIS FIRM, OR EVEN THE RHODE ISLAND BANKRUPTCY COURTS, AND JUDGE VOTALATO.

- THERE IS NO NEED TO GO TO OTHER COURTS AND INCUR ADDITIONAL EXPENSES, AS THIS COURT CAN RULE AND EITHER PARTY COULD THEN APPEAL FROM THAT RULING IF THEY SO DESIRE.

- CHALLENGE TRUSTEE RICHARDSON AS TO LEGAL STANDING IN THIS MATTER, A STATE OF CONNECTICUT PROBATE COURT MATTER.

- REQUEST THAT THE JUDGE QUESTION TRUSTEE RICHARDSON AS TO WHERE THESE PROCEEDS WOULD GO, IF THE PROBATE COURT GRANTED THEIR MOTION? WHO ARE THE REMAINING CREDITORS? DOES HE PLAN TO USE ANY PORTION OR ALL OF THIS INHERITANCE MONEY TO PAY HIS OR ANY OTHER ATTORNEY OR PROFESSIONAL FEES?

- ALSO HAMMER HOME THE FACT THAT THIS IS DOUBLE DIPPING INTO THE SAME ASSET THAT HAS ALREADY REDUCED THE DEBTOR ESTATE BY $500,000 - AND THAT ALL RICHARDSON WANTS TO DO IS GET HIS CURRENT FEES PAID, SO MUCH SO THAT HE KEPT THIS CASE OPEN FOR THE LAST 5-6 YEARS STRICTLY TO STEAL THIS MONEY FROM YOUR MOTHER'S ESTATE.

- FINALLY, CONSTANTLY BRING UP THE FACT THAT THIS COURT SHOULD DO ALL IT CAN TO HONOR THE LAST WISHES OF YOUR MOTHER AND FATHER AS TO THE BENEFICIARIES OF THEIR ESTATE.

GOOD LUCK!!!!!

21.

# ANN KENNEDY FULCO
### ATTORNEY AT LAW

111 FOUNDERS PLAZA, SUITE 1706
EAST HARTFORD, CONNECTICUT 06108
PHONE: (860) 289-9358 OR 206-0788
FACSIMILE: (860) 289-6210

January 24, 2003

<u>Hand Delivered</u>

Clerk's Office
U.S. District Court
450 Main St.
Hartford, CT 06103

    Re: Fulco v. Negro and Richardson, Civil Action No. 302CV2228 RNC

Dear Sir or Madam:

    In accordance with Judge Chatigny's Order dated January 21, 2003 granting Plaintiff's motion to deposit $297,496.00 into the registry of the court, I am enclosing a Rockville Bank check no. 534593911 made payable to the Clerk, U.S. District Court for that amount.

    Please deposit the funds into a separate interest bearing account during the pendency of the above-referenced interpleader action.

    Please date stamp the enclosed copy of this letter to indicate receipt of this letter and the check. Please contact me with any questions.

                                                 Very truly yours,

                                               Ann K. Fulco

Cc:    George A. Negro
        Andrew S. Richardson, Esq.
        Matthew McGowan, Esq.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re:<br><br>    George A. Negro,<br><br>        Debtor | BK No. 93-10087<br>Chapter 7 |

**TRUSTEE'S OBJECTION TO DEBTOR'S MOTION TO ENLARGE TIME
IN WHICH TO CLAIM EXEMPTIONS**

Now comes Arnold L. Blasbalg, the Chapter 7 Trustee herein (the "Trustee"), by and through his counsel, Peter J. Furness and Peabody & Brown, and hereby files the within Objection to Debtor's Motion to Enlarge Time in Which to Claim Exemptions. In support thereof, the Trustee avers as follows.

1. The Chapter 11 case was commenced on or about January 13, 1993, and the case was converted on or about November 19, 1993.

2. The Debtor's present counsel, Kirshenbaum & Kirshenbaum, has been representing the Debtor since on or about May 19, 1994.

3. The Trustee filed a series of requests for extension of time to file Objections to the Debtor's exemptions, as the Debtor had never filed amended exemptions with this Court, despite requests by the Trustee.

- 1 -

BROWN::WP2:[PJF.24608.2]STD.EX0;6

23.

4.  On or about July 20, 1995, this Court entered an Order permitting the Debtor no later than August 21, 1995 to disclose and identify whatever property the Debtor intended to claim as exempt from the bankruptcy estate. The August 21, 1995 date is approximately 2½ years subsequent to the filing of the Chapter 11 proceeding, and more than 1½ years subsequent to the conversion of the Chapter 11 proceeding to Chapter 7.

5.  The Debtor has had more than ample time to respond to the Trustee's requests to amend his schedules, and has now again voluntarily elected to not abide by another Order of this Court, by ignoring the August 21, 1995 deadline and making this request through counsel for an additional extension of 30 days.

6.  The Debtor was in Court on August 17, 1995 with regard to his noncompliance with a previous Order of this Court, and the Trustee's Motion for Contempt, wherein the Trustee's counsel discussed with the Debtor the necessity to file the amended exemptions by August 21, 1995 and warned him that he could lose his ability to protect property by exempting same if he did not meet the Court's deadline. *[handwritten annotation]*

7.  Despite the Court's Order providing the Debtor additional time and despite the Trustee's words of caution to the Debtor, the Debtor has again chosen not to abide by the deadline provided by this Court. *[handwritten annotation]*

8.  The Debtor has not provided any reason, cause or excuse for his not abiding by the August 21, 1995 deadline, and he

- 2 -

should not be permitted additional time because of the Debtor's lack of attention or his desire to ignore a Court Order.

WHEREFORE, the Trustee respectfully requests that the Debtor's Motion for Enlarge Time in Which to Claim Exemptions be denied.

Respectfully submitted,

ARNOLD L. BLASBALG,
By his attorneys,

Peter J. Furness (#3608)
PEABODY & BROWN
One Citizens Plaza
Providence, RI   02903
Phone: (401) 454-1000

Dated:   August 24, 1995

WITHIN TEN (10) DAYS AFTER SERVICE (TWENTY (20) DAYS FOR U.S. GOVERNMENT OFFICERS AND AGENCIES THEREOF), ANY PARTY AGAINST WHOM A 'PLEADING' IS FILED, OR ANY OTHER PARTY TO THE ACTION WHO OBJECTS TO THE RELIEF SOUGHT THEREIN, SHALL SERVE AND FILE AN OBJECTION TO THAT PLEADING. IF NO OBJECTION IS FILED TO A PLEADING WITHIN THE TIME PRESCRIBED HEREIN, THE PLEADING WILL BE DEEMED UNOPPOSED AND WILL BE GRANTED, UNLESS (1) THE REQUESTED RELIEF IS PROHIBITED BY LAW; OR (2) THE REQUESTED RELIEF IS AGAINST PUBLIC POLICY; OR (3) IN THE OPINION OF THE COURT THE INTEREST OF JUSTICE REQUIRES SUA SPONTE DENIAL OF THE UNOPPOSED MOTION.

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 25th day of August, 1995, a true and correct copy of the within Objection was mailed via United States first class mail, postage prepaid, to each of the persons listed on the attached service list.