Jan 13/2003

United States District Court
District of Connecticut
450 Main St Hartford Ct.
Civil Action No 302CV2228 RNC

George A Negro
Plaintiff — against
V

Att Ann Kennedy Fulco Bolton Probate att
&
Bolton Probate Judge Elaine Camposeo
&
Att Andrew S Richardson
Trustee of Chapter 7

Defendants Answer and Defenses
1. George Negro History
2. Major Points of Case
3. Estate of Joseph Negro & Leontina Negro
4. Last Will & testament

George A. Negro 860 599 2620
Son of Leontina & Joseph Negro

George Negro
6 Sisk Dr Apt 1
Pawcatuck, CT 06379-7904

27.

Certificate of Service

This is to Certify that the foregoing Answer was mailed to State of Dowling

Ann Falco Att. at Law
11 Founders R 1 Ste 1700
East Hartford CT 06108

Boyagian Harrison Richardson
182 Waterman St.
Providence R.I. 02906 - 4012739600

George A. Negron

28.

Leontina estate          Died Feb 5/2002

George Negro purchased the Bolton farm in 1988 at auction for $1,225,000. — Leontina developed Altimeres & in Comolese Hose.
Joseph Negro purchased farm in 1920
Joseph Negro died in 1968
Att Joseph Lessner prepared the will that left the farm to Leontina Negro
George Negro born 1926. Iran the farm from the 1930's in complete charge. I ownly went to the eight grade in school
I developed 200 milking cow operation. Bolton dairy milk plant & house del. 1959 along with the dairy farm operation, I stated 5 school bus operation in town of Bolton that developed into 11 towns - 256 school buses. This led to obtaining I CC Authority & livery permitts a 26 over the road Charter Coaches threw out the U.S. & Candia Named Eastern Bus Leines.
Purcased a 2nd farm 120A & later 20 more A with water rights next to the 120A. total 140A on 775 Vernon St, Manchester Ct.
Purchased a 300A farm outside of Montreal Candia
Shiped & sold trailer loads of hay to the states cheaper then you could produce it in the U.S. & no duty crossing the Country line (Argulture)
Groton S.B. Contract - 67 school buses. Purchesed 34 A on RT184 Groton. Built 8 bay garage for school buses & Coaches & got a dealer repair lience & did outside repair work in addition to the S Buses.
This led to purchasing ocean front propertys in Messquomic & the Ilandhouse resturant with lebor liquar on Atlntic ave.
In 1980, I sent my dauter Lorie to Colladge. Lorie met John Metas (Professional Conartis) & she married him
John Metas took controll of Gladys mine & free loaded from me threw Gladys from 1980 threw 2000, John Metas engenier the

divorce of 1988. I did not use an att. The settlement was one million dollars with no interest paid $100,000 a year $360 per week. & the 9 room Colonial house on the farm on Vernon St & 3 lots. I had no objection. I was very busy & everything producing. I made 3 payments. John Metas had Gladys sine over the one million doll settlement paper to John Metas & he would take care of her. The divorce settlement that John now owes is how John Metas falsifie amount owed by adding interest & forclosed on all my propertys & foring me into Bankcrupt protection. That never happened.

My B.K. filed to R.I. by att Connolie & Pannaria with all the propertys & 10 million dollars of school bus Contract work was cancell when Peter Furness, Blasbury & Richardson notified the towns to send the checks to the BK Court. Ladlaw bus Co., a National Co in the U.S. took over all the towns in 3 weeks, with there own buses & still operating to day.

I am left with eqt & all got reposesed. again I received no exception. Lost everything. Gladys got nothing. Gladys now has an att that has filed suit against John Metas. My son George L. Negro worked with me all his short life & owned eqt & tools died suddly 1994, & operated the Groton operation. John Metas sold Gees eqt & tools when he forclosed on me. The BK att fees alone are over 1 million dollars. Peter Furness, Blasbury, & Richardson & now they want my mothers estate money $300,000 that they have sold all the assets that included the farm in Bolton & now want the $300,000 - Some keep dipping. My BK was over in 96 - Should have been discharged 97 I live in the elderly housing Comply - I get SS $1,215.00 per month.

George E. Negro   # 8605992620

30.

5/2002 - ?lyr.

Will March 3, 1962

40 yrs ago

VOL. 46

## CODICIL TO LAST WILL AND TESTAMENT

I, JOSEPH NEGRO, of the Town of Manchester, County of Hartford and State of Connecticut, being of lawful age and of sound and disposing mind, memory and judgment, do hereby make, publish and declare this to be a codicil to my Last Will and Testament heretofore made, signed, sealed, published and executed by me and bearing date of March 3, 1962.

FIRST: I do hereby eliminate ARTICLE III of my Last Will and Testament.

SECOND: I do hereby add the following as ARTICLE III of my Last Will and Testament:

(a) I give, bequeath and devise to my wife, Leontina Negro, if she shall survive me, all of Class A Voting Stock in Bolton Dairy, Incorporated, owned by me at the time of my death.

(b) If my wife, Leontina Negro, does not survive me, then I give all of the Class A, Voting [Stoc]k, in Bolton Dairy, Incorporated, to my sons, George A. Negro and David Gilbert Negro, who sur[vive] me, equally or all to the survivor.

Except as hereby modified, I do hereby ratify, confirm, redeclare and republish my said Last [Will] and Testament dated the 3rd day of March, 1962.

IN WITNESS WHEREOF, I have hereunto set my hand and seal at Manchester, Connecticut, on the 6th of December, A.D., 1962.

Signed, sealed, published and declared by the said Joseph Negro, as and for a Codicil to his Will and Testament, in presence of us, who at his request, and in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses on the 6th day of December, 1962.

Joseph Negro

Lewis Segal
Helen Mamet    } witnesses
Stanley Muzikink

[Stat]e of Connecticut)
[Count]y of Hartford    ) ss. Manchester, December 6, 1962.

We the within named Lewis Segal, Helen Mamet, Stanley Muzikink being duly sworn, make affidavit [and] say: That we severally attested the within and foregoing Codicil of the within named testator, [and] subscribed the same in his presence, and at his request and in the presence of each other; that said testator signed, published and declared the said instrument as and for a Codicil to his [Last] Will and Testament in our presence on the 6th day of December, A.D., 1962; and that at the time [of ex]ecution of said Codicil, said Testator was more than eighteen years of age and of sound mind, [memor]y and judgment, and under no improper influence or restraint to the best of our knowledge and [belie]f, and we make this affidavit at the request of said testator.

Lewis Segal
Helen Mamet
Stanley Muzikink

[State] of Connecticut)
[Count]y of Hartford    ) ss. Manchester December 6, 1962.

Then personally appeared before me, and duly qualified to administer oaths, Lewis Segal, Helen and Stanley Muzikink and subscribed and made oath to the truth of the foregoing affidavit.

Ronald Jacob
Commissioner of the Superior Court

APPLICATION FOR PROBATE

31.

... of JOSEPH NEGRO, late of Bolton in said District, deceased.

The subscriber represents that Joseph Negro last dwelt in the Town of Bolton in said District, ...ed on the 9th day of September A.D. 1968, possessed of goods and estate in said District, ...g to be administered, leaving a widow, whose name and residence is Leontina Negro, RFD Bol-ton, Connecticut, and whose marriage to the deceased took place November 29, 1924; that said ...nt left as his only heirs-at-law, and next of kin, the persons whose names, residences, and ...onship to the deceased are as follows, viz:

| Name | Residence | Relationship |
|---|---|---|
| Leontina Negro | RFD Box 252, Bolton, Conn. | Wife |
| George A. Negro | 775 Vernon St., Manchester, Conn. | Son |
| David O. Negro | Hickory Hill, Andover, Conn. | Son |
| Raymond S. Negro | Hebron Rd., Bolton, Conn. | Son |

t said deceased left a will dated March 3, 1962 with codicil thereto dated December 6, 196... h presented for probate, wherein George C. Lessner is named executor; ...erefore your petitioner prays that said will may be proved, approved, allowed and admit... ...ate, and letters testamentary may be granted to the executor herein named. ...ted at Manchester, Conn. this 30th day of September, A.D. 1968.

Leontina Negro

... undersigned, being all the heirs-at-law, next of kin, and devisees and legatees interested ...oregoing petition, accept service and waive notice of the pendency of the foregoing petition.

Leontina Negro
George A. Negro
David O. Negro
Raymond S. Negro

CONNECTICUT
TOLLAND                      BOND

all men by these presents, that we, George C. Lessner, as principal and Leontina Negro, ...  are holden and stand firmly bound and obliged jointly and severally unto the State of ...it, in the penal sum of One thousand dollars ($1,000), to be paid to the said State or to ...n attorney; to the which payment well and truly to be made we, the said obligors, and each of us, our heirs, executors, administrators, successors and assigns and each and ...hem for and in the whole sum aforesaid, firmly by these presents. ...d with our hands and sealed with our seals, this 30th day of September, 1968. ...ndition of this obligation is such, that whereas the above bounden George C. Lessner ...eared as Executor of the will of JOSEPH NEGRO late of Bolton, owning property in said ...learned, and was approved in said court and accepted said trust, ...herefore, if the said George C. Lessner shall faithfully discharge the duties of said ...rding to law, then the above obligation shall be void; otherwise to remain in full force.

George C. Lessner
Leontina Negro

32

VOL. 46

)n't)
; X(con't)                                                                                          53

13. In arriving at the income from my estate or from any trust, to amortize or fail to amortize any part or all of the premium or discount on notes, stocks, bonds, or other securities, evidences of indebtedness or assets which were purchased; to treat any part or all of the profit resulting from the maturity or sale of any asset, whether purchased at a premium or at a discount, as income or corpus, or apportion same between income and corpus; to apportion the sales price of any asset between income and principal; to treat any dividend (including stock dividends) or other distribution on any investment as income or corpus, or apportion the same between income and corpus; to charge any expense against income or corpus or apportion the same; to provide or fail to provide a reasonable reserve against depreciation or obsolescence on any assets subject to depreciation or obsolescence; all as such Executor or Trustees may reasonably deem equitable and just under all the circumstances.

14. In distributing the income or corpus of the Estate or Trust property under the provisions of this Will, the Trustees or Executor may, unless specifically otherwise provided for in this Will, make such distribution in such amounts and proportions or installments and at such times as they in their sole discretion deem proper.

15. Generally to do, perform and execute any other act, deed, matter or thing whatsoever, which ought to be done, executed or performed, or which in the discretion of the Executor or Trustees ought to be done, executed or performed, in and about the premises, as fully and effectually as I could do if personally present.

B. Except as herein otherwise specifically provided for, any distribution by my Executor ees, whether of income or principal, may be made wholly or partially in kind; or they may such purpose any part or all of my estate or trusts and distribute all or part of the cash of such sale; or they may make such distribution partially in kind and without allocating property to different distributees, and partially in cash; all as may be deemed best and most in the sole discretion of my Executor and Trustees. In determining the value of any property ributed in kind, the judgment or valuation of the executor or trustees shall be final and My executor and trustees may in making any division in kind, allot undivided interests in properties or business or in the same property or business to several trusts or shares or

C. The Trustees and Executor hereunder shall not be personally liable for anything y in good faith do or fail to do.

D. The Trustees and Executor hereunder are hereby empowered to do anything which they rized to do under this Will with or without any order of any Court, and in the case of any changes, leases, etc., with or without any advertisement, at public or private sales or ons.

E. All successor Trustees and Executors hereunder shall have all the powers, authority, n and exemptions given to the original trustees and executor hereunder; and all provisions astrument relating to the original trustees and executor shall apply to all successor trustees tors.

F. If any distribution of principal or income is to be made to a minor or an incom- rson, the Trustees or Executor may in their discretion make such distribution directly to >n, whether or not such person has a guardian, or they may make such distribution to the

33

guardian or spouse of such person or they may otherwise apply same for the benefit of such any manner which in their discretion they may deem proper, and in the case of any distri- is for the benefit of such person in any of the manners just authorized, the receipt of the whom payment is made shall be full discharge thereof to the Trustees and Executor.

G. In all matters, valuations, acts, deeds or decisions, which are left to the dis- the Trustees or Executor, such Trustees or Executor shall act in a manner which they rea- em to be equitable and just under the circumstances; and their sole judgment, opinion, ion or valuation shall in such event be final.

## ARTICLE XI

e exercise of all of their powers and duties hereunder, my Trustees shall be held to a f reasonable care.

TNESS WHEREOF, I have hereunto set my hand and seal at Manchester, Connecticut, on the 3rd oh A.D., 1962.

Joseph Negro

d, sealed, published and declared by the said Joseph Negro, as and for his Last Will and in presence of us, who at his request, in his presence, and in the presence of each other, nto subscribed our names as witnesses on the 3rd day of March A.D., 1962.

Lewis Segal  )
George C. Lessner ) Witnesses
T. Paul Sullivan )

onnecticut)
artford    )  ss. March 3, 1962.

in named Lewis Segal, George C. Lessner, T. Paul Sullivan being duly sworn, make affidavit at we severally attested the within and foregoing Will of the within named testator and the same in his presence and at his request and in the presence of each other; that the or signed, published and declared the said instrument as and for his Last Will and Testa- presence on the 3rd day of March A.D., 1962; and at the time of execution of said Will, or was more than eighteen years of age and of sound mind, memory and judgment and under influence or restraint to the best of our knowledge and belief, and we make this affidavit est of said testator.

Lewis Segal
George C. Lessner
T. Paul Sullivan

nnecticut)
artford   ) ss. March 3, 1962.
personally appeared before me John S. G. Rottner duly qualified to administer oaths. George C. Lessner and T. Paul Sullivan and subscribed and made oath to the truth of the fidavit.

John S. G. Rottner
Commissioner of the Superior Court

34.

*2 Checks Received April 5/2002 + the Leontina's estate*

# DEVLIN, PETERS & TARPEY, LLC
## ATTORNEYS AT LAW

ROBERT F. PETERS
MICHAEL J. DEVLIN
KERRY A. TARPEY*
*also admitted in Massachusetts

ABBOT B. SCHWEBEL*
of counsel
Home:
845 ARNOLD AVENUE, UNIT #18
POINT PLEASANT, NJ 08742
(732) 701-0867 • (732) 701-0886
Fax: (732) 701-0870
E-mail: abbotschw@aol.com

11 SOUTH ROAD
P.O. BOX 400
SOMERS, CONNECTICUT 06071
(860) 749-0793

Fax: (860) 763-4302
E-mail: dptlaw@snet.net

To: George Negro, Ray Negro, Gilbert Negro    4/2/02
From Abbot B. Schwebel

The Andover Probate Court has directed me to send you the enclosed check for $1,646.91 from your Mothers Estate.
The decree was dated 4/1/02. I have paid all the known bills against the Estate. This matter is completely separate from the Family Trust. *It is the will*

Sincerely,

Abbot B. Schwebel

April 5/2002 - Received Ck # 1,646.91
May 17/2002 - Received Ck. 164.53
                                    1,811.44

Checks received from Leontina estate

35.

*Copies to Judge Composio, atty Fee & Richardson June 6, 2002*

## STATE OF CONNECTICUT

| | |
|---|---|
| ESTATE OF JOSEPH NEGRO | COURT OF PROBATE |
| TRUST, F/B/O LEONTINA NEGRO | DISTRICT OF ANDOVER NO. 001 |
| | JUNE 6, 2002 |

### DECLARATION OF BENEFICIARY GEORGE A. NEGRO IN RESPONSE TO SUCCESSOR TRUSTEE'S APPLICATION FOR AUTHORIZATION TO COMMENCE INTERPLEADER ACTION

On May 13, 2002 Successor Trustee, in the above entitled matter, submitted to the Probate Court a summary of "Fiduciary's Periodic or Final Account". She also filed an application for authorization to commence an interpleader action in a Federal or State Court to determine distribution of my inheritance, from my recently deceased mother Leontina Negro's estate; as well as memoranda of law in support of same.

The Successor Trustee may or may not have all the relevant facts in this case, in order to determine her recommendation to this Court, as to a proposed course of action. As one matter of actual fact, she did not include in her accounting summary that Trustee Abbott Schwebel has already disbursed two checks, to each of the three beneficiaries, in amounts in excess of $1,000, upon the order of this court on April 1, 2002. While this may or may not establish this court's initial ruling in March of this year - in the first hearing held in this matter - that the Court intended to disburse the proceeds from the estate to all three surviving sons, as per the last will and testament of Joseph Negro and in trust for Leontina Negro, it is nonetheless factual. The Court further

36.

dismissed Mr. Richardson's claims, at that hearing, as being irrelevant. The payment of these first two checks, to all three sons, may constitute an affirmation of that order. As such this would now be a matter of res judicata, and any interpleader motion may not even be appropriate. Trustee Richardson would, therefore, more appropriately file an appeal of the Probate Court's order, or seek some other means of liening any or all of my assets.

If however, this Honorable Probate Court now seeks to amend or reverse its initial order, then I offer the following facts in objection to initiation of an interpleader action, and in support of this Probate Court's initial inclination and order; or, in the alternative, that this Court retain jurisdiction, hold any additional evidentiary hearings required, and make any final rulings on the disbursement of the funds from my mother's Estate. Mr. Richardson, as the Bankruptcy Trustee, would not be compromised, in that he could appeal any adverse ruling. I have faith in the jurisdiction, the integrity and the competency of this Honorable Court and so should he. Why go forum shopping - when a just ruling can be achieved right here, in this Court, in more timely and less costly proceedings.

First, and foremost, it should be emphasized that every dollar, that is now in the Estate of my deceased mother, was derived from her sale of that single parcel of the real property on West Street, in Bolton, Connecticut, commonly known as the Bolton Dairy Farm in 1988 - that constituted the bulk of the Estate of my late father Joseph Negro - whose last will and testament is the basis for the distribution of the assets of this Estate, to the named beneficiaries.

Further, it is significant that I, George A. Negro, was the sole purchaser of the Bolton Dairy Farm parcel, from my mother, and the funds she received were obtained from a loan to me - from a financial institution (copy of loan approval included herein as Exhibit A) - and was secured both by property I owned in Groton, CT., and the Bolton Dairy Farm. Those funds were immediately placed in trust for her total care, and well being, for the balance of her natural life. This was done, while scrupulously preserving the last will and testament of my father Joseph, that upon my mother's death any remaining funds would be distributed to the surviving Negro sons, Gilbert, Raymond and myself.

37.

In order to preserve the integrity of my father's will and to assure that my mother be properly cared for, as well as my mother's limited capabilities to handle her own affairs, a trustee was appointed to oversee those affairs. This was agreed to, by the surviving sons, as being in the best interest of our mother, and the maintenance of the integrity of the trust.

My mother's condition deteriorated, over the last 14 years, prior to her death, and she could make no alterations or amendments to her Trust. Surely, had she been competent to handle her own affairs, she would have never allowed any proceeds from her estate to go to any party, or parties, other than her surviving sons, as was the intent of her husband's last will and testament, upon her death. She most assuredly would have amended her Estate beneficiaries, if she knew that any such possibility could occur. Surely Mr. Richardson could not have interfered with that act, or claimed an interest then. Yet he felt he could take advantage of the fact that my mother could not exercise her true will and last wishes, given all the facts, and still he seeks to literally steal that right from her, even in death. It is both a cruel and unjust act for anyone to do such a thing.

This is why I attempted to disclaim my inheritance, upon her death - so as to honor my father and mother's true wishes, and assure that their Estate go to their family members alone. Even though I truly believe I am entitled to my inheritance, and surely it would make my life a bit more comfortable in my golden years; I would rather receive nothing, and have my share go to my brothers, than to dishonor my parents last wishes, and enrich greedy attorneys, who merely seek to pay themselves. Even that was unacceptable to these men. They have already stripped me of an entire life's work and sweat. Now they wish to pick the bones of my parents as well. It is morally reprehensible and an outrage.

My purchase of the Bolton Dairy Farm, from my mother Leontina Negro, and the immediate placement of those funds in this trust in 1988, is significant. It is significant that in 1993 when I filed for personal bankruptcy, a full five years after I had purchased the property, one of the major assets of my Estate was the Bolton Dairy Farm property and its assets. That land and those assets were utilized

by the Bankruptcy Court Trustees to reduce the Debt of my Estate by over $500,000 to a secured creditor, and over $60,000 from collected tenant rents, over a two year period, to the general fund of my Estate - mainly to pay the Trustee's attorneys and the Trustee's fees - which over the years has amounted to hundreds of thousands of dollars - and is, to this day, still accruing.

Why the aforementioned is significant, is that now comes the Bankruptcy Court, in 1996, upon a motion by the Trustee, and Trustee's counsel Peter Furness, after having already utilized the Bolton Dairy Farm asset to reduce my Estate debt to both secured creditors, and to their own fee payments, amounting to over $500,000, and they secure an "interest" in the approximately $300,000 in my mother's Estate, that would legitimately go to me, upon her death, according to her, and my father's, last wishes. Their last wishes should count for something. It truly should be a Probate Court's mission, and desire, to try and satisfy the true wills and last worldly wishes of the decedents; whenever possible and within the scope of probate law.

Essentially what the Bankruptcy Court, and the Trustee, want to do is "double dip" into the self same Bolton Dairy Farm asset, from which they already derived a benefit to my Debtor Estate of over $500,000 - and get another $300,000 from the very funds I paid my mother to purchase that very asset in 1988 - a full five years before the economic downturn of the early 1990's, and some extremely bad legal advice forced me into essentially turning over, what was on paper a $12,000,000 estate, that was immediately eviscerated by cunning, and in some cases, malfeasant Federal Bankruptcy Court Trustees and their lawyers. That, however, is a matter for another court, at another time. I merely bring it up to indicate the avarice of the Trustees and their lawyers, whom were appointed in my Bankruptcy case, since 1993.

Their "efforts" to "reorganize my debt and help me recover" in 1993, at the age of 65, has left me, a decade later at 75, residing in a very modest assisted living facility, on a fixed social security income. They did not even try to preserve one of my modest residences, as the law would have allowed, for me to live out my existence with some semblance of dignity.

39.

This brings me to another significant matter that I would ask this honorable court to consider. I filed for bankruptcy in 1993. In 1996 the Bankruptcy court, upon a motion by the Trustee, and his counsel Peter Furness, were granted an "interest" in my mothers Estate. At that time I was without legal representation, after having been financially decimated for over 3 years, by a stream of supposed bankruptcy legal specialists, who were themselves enriched by the Court and the Trustees, while allowing my case, and my very life, to spiral into the abyss.

I had no financial means, whatsoever, to contest or appeal this ruling in 1996, or 1997, or to this very date. At that time, as now, I was barely able to survive day to day. I simply prayed that when the time came when my dear mother passed, that a Probate Court would see the truth of the circumstances, and not allow my mother's and father's last wishes to be trumped by slick legal maneuvering, and taking advantage of my weakened financial position to defend myself against unfair or unjust actions.

It should also be of interest, to this honorable Court, that since the Trustee and his counsel obtained their order of an "interest" in my mother's Estate in 1996, they have consistently refused to close my Bankruptcy case, which is now almost a decade old. There are no other financial or property assets, that I am aware of, that are to be liquidated; and it is questionable if the Trustee intends to make any further payments to any unsecured creditors, as the secured creditors have all been essentially paid by the sale or foreclosure of my other real property assets.

As a matter of fact over the years, when I have questioned the Trustee and his counsel, why my case was not being closed out, and also requested detailed financial accountings from the last 6 years; I have been consistently told (in a most callous way I might add) they were "waiting" for my mother to die to get the funds from her Estate. It would be no surprise if every dollar of my mother's Estate were to go to the payment of the Trustee, and the Trustee's attorney's, fees - with a rapid close-out of my case shortly thereafter - over 6 years later than they might have closed it out. This has been a pattern of behavior of

5

the Trustees, and their counsel, in my bankruptcy case from the very beginning.

As the Successor Trustee, Ms. Fulco, accurately points, out in her application, the Bankruptcy Court never actually placed a "lien" on my mother's Estate, but merely allowed the Trustee to claim an "interest". Further, this order was obtained from a court in Providence, Rhode Island, albeit a Federal Bankruptcy Court, that may or may not have jurisdictional standing, or judicial supremacy, over this Honorable State of Connecticut Probate Court, in a State Probate matter.

As to any interpleader action in another State or Federal Court, that hardly seems to be necessary, and would add unnecessary time and expense to the resolution of this matter. This honorable Court is perfectly capable of taking testimony - such as the aforementioned factual assertions - and hearing from other witnesses, including the Trustee and the Trustees' counsel, to determine if the funds at issue should be legally distributed either to them, or the beneficiaries whom my father and my mother left this world believing would receive them - their blood family, which would mean all three of their surviving sons and their respective families.

Therefore, declarent prays that this Honorable Court will consider the aforementioned factual assertions, and deny the Successor Trustee's motion and application to file an interpleader in this case. Further that this Court retain jurisdiction over this matter and sustain it's initial order of March, 2002. If the Court does not wish to rule at this time, and desires to take more testimony; that it order an expeditious and expanded hearing; and, then render an unbiased and reasoned decision, based on both the law, and the last will and testament of my father Joseph Negro and, on his behalf - as well, as her own - my mother Leontina Negro. Thank you.

Respectfully submitted,

*George A. Negro*

George A. Negro

41.